**In re WILLIEN et al.**
**Patent Appeal No. 3376.**

Court of Customs and Patent Appeals.
Jan. 28, 1935.

Augustus B. Stoughton and E. S. W. Farnum, Jr., both of Philadelphia, Pa., for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims, Nos. 9 and 10, in appellants' application for a patent for an alleged invention relating to a process for manufacturing carbureted water gas of low specific gravity.

At the time of the oral arguments in this court, appellants moved to dismiss the appeal as to claim 10.

Claim 9 reads: "Claim 9. The process of making carbureted water gas of low specific gravity which, when practiced in a set including a single generator, a single carburetor, a single superheater, in individual detached shells, and a wash box, connected in series, comprises internally preheating the carbureter and superheater solely by air blast gas from the generator, making carbureted water gas by forward steaming and carbureting, *introducing hydrocarbon oil into the back run steam, and generating gas comprising carbureted water gas and hydrogen and of lower specific gravity than the forward run carbureted water gas and of lower specific gravity than would be the case in the absence of the introduction of the hydrocarbon oil by passing the mixture of steam and oil down through the fuel bed partially decomposing the hydrocarbon oil to hydrogen and to oil gas which latter carburets the water gas simultaneously generated in the fuel bed.*" (Italics ours.)

The references are:

Young, 1,519,523, December 16, 1924.
Young, 1,751,849, March 25, 1930.
Whitwell, 1,752,223, March 25, 1930.

Appellants' application, Serial No. 297,243, filed August 3, 1928, is a continuation of their application, Serial No. 187,876, filed April 30, 1927.

In their specification, appellants state:

"Our invention involves an improvement in the process of making carburetted water gas in a three-shell set including a generator, carburetor and superheater, which comprises a blasting cycle to heat the fuel bed to incandescence and store heat in the carburetor and superheater, one combustible gas-making cycle wherein steam is passed through the fuel bed of the generator and the resultant gas passed into and through the carburetor where it is enriched with oil, the enriched gas being passed into and through the superheater and wash box and the usual purifying and gas treating devices into a holder, and a second combustible gas generating cycle commonly known as the back-run cycle, consisting in introducing steam at any convenient point into the set, preferably into the superheater, and then passing the steam through the set into the generator and through the fuel bed therein, the resultant gas being passed into the wash box and thence into and through the purifying and gas treating devices and usually admixed with the combustible gas made in a previous cycle. According to such processes, carburetted water gas of a B. T. U. value equal to the mean B. T. U. value of the gas obtained from both combustible gas generating cycles of operation is produced and a substantially constant volume of gas is generated by the gas-making set.

"According to the present invention, oil is added to the steam passing through the superheater and carburetor prior to passage thereof through the fuel bed in the generator, the resultant mixture being passed through the fuel bed and the resultant gas passed directly from the generator to the wash box. Preferably, the oil is introduced into the superheater simultaneously with the introduction of steam thereinto. By the practice of our process carburetted water gas of a greater B. T. U. value, low gravity gas and a greater yield of gas it obtained.

"In the operation of water gas sets there are frequent temporary demands for increased gas and heretofore, to accommodate such demands, it has been necessary to provide a spare installation for the generation of the increased gas to meet such temporary demands or peak loads. According to our invention, carbureted water gas sets are operated as is customary to meet the normal demands but when it is necessary to generate

more gas to accommodate increased or peak demands an enriching constituent such as oil, as hereinbefore pointed out, is added to the gas-making steam of the back run cycle, preferably introduced into the superheater and the mixture of steam and oil is passed into and through the fuel bed in the generator down through the fuel bed so that more gas and/or gas of higher B. T. U. value is produced. It will be noted that according to our invention it is possible to meet the incidental and irregular or temporary demands for increased gas without having a spare installation, or without having a gas set with a greater capacity than that required for normal operation."

In his decision, the Primary Examiner stated that the appealed claim was fully met by the patents to Young, No. 1,751,849, and Whitwell. With reference to the latter patent, the examiner said: "Whitwell 1,752,223 discloses the first two steps of applicants' process, these being conventional as stated supra, and further acknowledged to be old by applicants on page 5 of the specification as amended. In addition, Whitwell discloses step (3), in that he injects a fluid hydrocarbon such as natural gas, with his back run steam *at the top of the superheater*. Note page 4, lines 12-50. In lines 41-44 'other gas' is defined as including also *vapors*. The oil injected by applicants must be vaporized before it is subjected to the cracking temperatures in the fuel bed."

It appears from the record that the patent to Young, No. 1,751,849, was issued March 25, 1930, on an application filed June 22, 1922.

On October 10, 1929, the patentee Young inserted the following, by amendment, in his original application: "While I have described carbureting with oil during the forward run, the oil being admitted through nozzle 22, and the carbureting with the volatiles from bituminous coal admitted at 90 during the back run, it is evident that oil might be admitted at 22 during a back run or that other carbureting material than oil might be admitted at 22 during either a forward or a back run. Here again the flexibility of the process is one of its important merits."

Appellants submitted an affidavit under rule 75 of the Rules of Practice in the United States Patent Office, in which it was established that they completed the invention prior to the amendment made by Young to his specification.

In view of the fact that the patentee had not, prior to his amendment, disclosed specifically the introduction of hydrocarbon oil during the back-run cycle, appellants contended that the patent to Young, No. 1,751,-849, was not a proper reference.

However, the Primary Examiner did not adopt that view, but, on the contrary, held that the amendment was based on "matter originally disclosed and claimed" by Young.

On appeal, the only reference referred to by the Board of Appeals was the patent to Young, No. 1,751,849. With regard thereto, the board said:

"The patent to Young, 1,751,849, discloses this modification except that in the application as originally filed the back flow of steam mingled with finely divided material which apparently was coal. An amendment was introduced into the Young Application stating that oil could be employed instead of coal. Appellants filed an affidavit under Rule 75 which the Examiner has accepted as showing a completion of the invention covered by claim 9 prior to the date of the amendment in the Young application. The Examiner, however, has held that the reference to oil in the amendment is not new matter but is supported by the Young disclosure as originally filed. He calls attention to the fact that original claim 1 was generic to a hydrocarbon which might be either oil or coal and that oil was mentioned on page 3 of the original specification.

"The use of a generic term in the original claim does not specifically disclose the use of oil. The reference to oil on page 3 contains no suggestion that the oil which enters through the pipe 21 would be mingled with the back flow steam. We have also investigated the other matters referred to by the Examiner in support of his holding that the amendment did not involve new matter but in our opinion there is no disclosure in the Young application as originally filed that oil will be mingled with the back flow steam. However, as shown by the original claim 1 above referred to, Young regarded his invention as generic to hydrocarbons such as coal and oil and we consider that it would readily occur to one skilled in the art to substitute an oil spray for the coal dispensing means. * * *

"For the reason above stated, the decision of the Examiner is affirmed in holding the subject matter of the appealed claims to be unpatentable over the prior art."

We deem it unnecessary to discuss the references of record, further than to say that, although they disclose that it was old in the art to introduce hydrocarbon oil in the *forward-run cycle* for the purpose of enriching the gas, the patent to Young, No. 1,751,849, as amended, is the only reference which discloses the gist of appellants' invention—the introduction of hydrocarbon oil in the *back-run cycle*.

The Board of Appeals held that the patentee's application, prior to the amendment of October 10, 1929, did not disclose that feature. The board concluded, however, that the patentee Young "regarded his invention as generic to hydrocarbons such as coal and oil," and that, therefore, it would not involve invention to "substitute an oil spray for the" patentee's "coal dispensing means." Accordingly, the sole issue in the case is whether, in view of the references disclosing the use of hydrocarbon oil in the *forward-run cycle* for the purpose of enriching the gas, it would involve invention to substitute such oil for "finely divided material which apparently was coal" in the *back-run cycle* in order to secure a gas of increased hydrogen content, lowered specific gravity, and increased volume.

It is conceded by counsel for appellants that "coal and oil are both hydrocarbons." It is contended, however, that they are not equivalents in the art here involved.

It is obvious, we think, that coal and oil are no more equivalents in the manufacture of carbureted water gas, than in many other of the variety of uses to which they may be put.

The specification in the Young patent, No. 1,751,849, shows evidence of great care in its preparation. The patentee's application was filed June 22, 1922, but it was not until October 10, 1929, long after appellants' application was filed, that it occurred to the patentee that the introduction of oil in the back-run cycle was of sufficient importance to warrant a statement of it in his specification.

We think it is a fair deduction, and one to which appellants are fully entitled, that the reason the patentee did not disclose and claim the involved invention in his original application was because its importance had not then occurred to him.

In view of the facts of record, we are of opinion that appellants' process, which is new, useful, and an important contribution to the art, was not obvious to those skilled

therein; that it involves invention; and that appellants are entitled to a patent therefor.

The appeal is dismissed as to claim 10.

For the reasons stated, the decision of the Board of Appeals is reversed as to claim 9.